# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

SHAWN MILNER,
    *Plaintiff*,

v.                                      No. 3:18-cv-00903 (JAM)

SHARRON LAPLANTE, *et al.*,
    *Defendants*.

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Shawn Milner is a pre-trial detainee in the custody of the Connecticut Department of Correction. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983. After an initial review, the Court concludes that the complaint should proceed in part and be dismissed in part.

### BACKGROUND

The complaint is hand-written in very light script that is difficult to read. It names seven defendants, Sharron Laplante, Allison Black, Lieutenant Rivera, and Nurses Chris, Joe, Michael, and Denise.

Milner suffers from a seizure disorder. In April 2018, he was being treated at Bristol Hospital for seizure complications. On April 13, 2018, he was transferred from Bristol Hospital to Hartford Correctional Center and housed in a single cell in the segregation unit. Doc. #1-1 at 5 (¶¶ 10-11).

Milner did not receive a disciplinary report to warrant confinement in segregation. *Ibid.* (¶ 12). His concrete cell contained metal objects which could injure him if he had a seizure. Correctional staff toured the unit every fifteen minutes, but Milner had no cellmate to summon medical assistance if he suffered a seizure while correctional staff were not there. *Ibid.* (¶ 13).

1

During his time in segregation, he was denied the three recreation periods per day afforded to other inmates at Hartford Correctional Center. *Id.* at 5-6 (¶ 14).

On the evening of April 13, 2018, Milner told Nurse Diane that he was at risk of injury from seizure activity while housed alone.[1] He also told her that he was not receiving the proper dose of anti-seizure medication and was not receiving his pain and anxiety medication. Nurse Diane stated that she could do nothing. *Id.* at 6 (¶ 15). Milner reported the medication issues to every nurse that distributed medication between April 13, 2018, and May 21, 2018, the day he drafted this complaint. All nurses stated they could not help him. His medication history is recorded in correctional medical records. All medical staff have access to this information. *Id.* at 6 (¶ 16), 17.

Milner wrote to Dr. Laplante several times informing her of the medication issues and complaining of severe head and back pain. Dr. Laplante did not respond. Milner had not been seen by a doctor since his arrival at Hartford Correctional Center, even though the Bristol Hospital discharge instructions recommended follow-up with a physician. *Id.* at 7 (¶ 17). Milner also stopped Lt. Rivera during a unit tour to complain about the medication issues and lack of recreation. He asked to be transferred to general population but Lt. Rivera said he could do nothing. *Ibid.* (¶ 18).

On April 17, 2018, Milner suffered a grand mal seizure. He injured his face and back during the seizure. When he regained consciousness, he notified medical staff, Lt. Rivera, and Dr. Black. No medical care was provided. *Ibid.* (¶ 19).

On April 28, 2018, Nurses Diane and Michael did not deliver Milner his morning and

---

[1] Nurse Diane is not named as a defendant. Later in the complaint, however, Milner attributes this same action to Nurse Denise. Doc. #1-1 at 13-14 (¶¶ 45-46). The Court assumes that Nurse Diane is the same person as Nurse Denise.

evening anti-seizure medication. *Id.* at 8 (¶¶ 21-23). At 10:00 p.m., he began feeling lightheaded and dizzy and began to see spots. His vision became blurry, and he had a metallic taste in his mouth. These are all preliminary indicators of a seizure. Nurse Chris was touring the housing unit. When Milner called for help, Nurse Chris laughed at him and told him to sit on his bunk. Milner lost consciousness and suffered a grand mal seizure, injuring his face, neck, and back. *Ibid.* (¶ 24). When he regained consciousness, he was handcuffed on a stretcher. *Id.* at 9 (¶ 25).

After suffering the seizure, Milner was given his anti-seizure medication, although still not the correct dosage. Nurse Joe could not tell him why he had been denied his medication all day. *Ibid.* (¶ 26). When Milner asked whether he was aware that missing medication could trigger seizures, Nurse Joe became agitated and said that he would file a false report stating that Milner had faked the seizure. *Ibid.* (¶ 27). No treatment was provided for Milner's injuries. Instead, medical staff laughed at him. *Ibid.* (¶ 28).

Milner alleges that the nurses failed to follow Correctional Managed Health Care protocol, which required an assessment of injuries. No one determined the severity of his seizure. *Id.* at 10, (¶ 29). He was not examined by a doctor or a neurologist. *Ibid.* (¶ 30). Nurse Joe ordered that he be placed, naked and alone, in a cold cell with no amenities or outside window. No medical treatment was provided. *Ibid.* (¶ 31). The next morning, he was given clothes and told to return to his housing unit. *Id.* at 11 (¶ 35).

Milner filed this complaint on May 29, 2018. On July 5, 2018, he moved for a temporary restraining order and preliminary injunction. On November 26, 2018, he filed a notice of change of address to Bridgeport Correctional Center.

**DISCUSSION**

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the compliant, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater,* 623 F.3d 90, 101-02 (2d Cir. 2010).[2]

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Milner alleges claims for deliberate indifference to serious medical needs, denial of medical care, cruel and unusual conditions of confinement, atypical and significant hardship, failure to supervise or protect, violation of the Americans with Disabilities Act, and denial of

---

[2] The Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. Milner has alleged state law claims for negligence and intentional infliction of emotional distress. Doc. #1-1 at 2. If there are no facially plausible federal law claims against any of the named defendants, then the Court would likely decline to exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. See *Hamlin v. City of Waterbury*, et al., 2017 WL 4869116, at *1 n.1 (D. Conn. 2017).

equal protection of the law. Doc. #1-1 at 2. He seeks damages and injunctive relief.

*Deliberate indifference to medical needs*

Claims of pretrial detainees involving deliberate indifference to medical needs or other unsafe conditions of confinement are considered under the general due process clause of the Fourteenth Amendment rather than under the cruel-and-unusual-punishment clause of the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29-34 & n.9 (2d Cir. 2017); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717-18 (S.D.N.Y. 2017). For a medical needs claim, a pretrial detainee must first show that the medical need was "sufficiently serious" to warrant the need for treatment. *See Darnell*, 849 F.3d at 29. A "sufficiently serious" need is an urgent medical condition that is capable of causing death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

The detainee must further show that the officer acted with at least deliberate indifference (whether in terms of what he actually knew or what he should have known) with respect to furnishing the needed treatment. *See Darnell*, 849 F.3d at 29. Thus, if the medical condition is sufficiently serious to warrant treatment, then in order "to establish a claim for deliberate indifference to [serious medical needs] under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

Milner alleges that he informed all of the defendants, either verbally or in writing, that he was not receiving all of his medication or the proper dosage of medication, and that he was

experiencing severe head and back pain and could experience seizures without proper medication. Doc. #1-1 at 6-7 (¶¶ 15, 17). Despite this information, no defendant would take action to ensure that he received proper treatment. These allegations are sufficient to state a plausible claim for deliberate indifference to a pretrial detainee's medical needs. *See Boomer v. Lanigan*, 2002 WL 31413804, at *7 (S.D.N.Y. 2002) ("Ignoring requests for medical care made by a prisoner known to be an epileptic may constitute deliberate indifference to serious medical needs, particularly when it is undisputed that the inmate suffered a seizure after those requests."). Milner's deliberate-indifference-to-medical-needs claims may proceed as to all defendants.

### *Conditions of confinement*

Apart from his claim of deliberate indifference to medical needs, Milner alleges two challenges to his conditions of confinement. He alleges that his conditions imposed atypical and significant hardship because he was confined in segregation to a single cell that contained sharp edges that could injure him if he experienced a seizure, and because he lacked adequate recourse to assistance if he suffered a seizure. Notwithstanding these risks, however, he does not allege that the injuries he sustained as a result of his seizures were caused by these background conditions. This aspect of his conditions-of-confinement claim may proceed only to the extent that he is able to show that the dangerous conditions in his cell or lack of monitoring actually caused him harm.

Milner further alleges that one night Nurse Joe placed him while injured in a cold, empty cell without his clothes. Because this treatment appears to have served no apparent legitimate penological purpose, I will allow Milner's conditions-of-confinement claim to proceed against Nurse Joe. *See, e.g.*, *Miller v. Derby Police Station*, 2017 WL 2661628, at *2 (D. Conn. 2017) (allegations of "soaking plaintiff in water and forcing him to sit in an artificially cold cell with no

shoes or shirt" for one night adequately stated a Fourteenth Amendment claim).

### *Disability discrimination*

Milner contends that defendants violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The statute is intended to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998).

To state a claim under Title II of the ADA, a plaintiff must allege facts showing that he is a qualified individual with a disability, that he was excluded from or denied benefits of a service, program or activity, or otherwise discriminated against, and that the denial or discrimination was due to his disability. *See Phelan v. Thomas*, 439 F. App'x 48, 50 (2d Cir. 2011) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)). The fact that a disabled prisoner is subject to adverse treatment does not constitute a violation of the ADA's anti-discrimination provision absent evidence that the adverse treatment was by reason of the prisoner's disability. *See Wright v. New York States Department of Corrections*, 831 F.3d 64, 72 (2d Cir. 2016) (discussing elements of ADA claim in prison context). Accordingly, courts "routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010).

Although Milner alleges that he is disabled with an epileptic seizure disorder, he does not allege facts to suggest that he was singled out for adverse treatment because of this disability.

He alleges that he was denied proper medical care, but he alleges no facts suggesting that the denial was because of his seizure disorder. Similarly, he alleges that he was denied recreation because he was confined in segregation, not because he has a seizure disorder. Finally, he alleges that Nurse Joe placed him in the medical cell because he was complaining about his medical treatment, not because he has a seizure disorder. As Milner has not plausibly alleged that he was discriminated against because of his disability rather than for other reasons, he has not stated plausible grounds for relief under the Americans with Disabilities Act.

### *Request for injunctive relief*

Milner has filed a motion for a temporary restraining order. But because he has been transferred to a new facility in Bridgeport, his claim for injunctive relief against defendants at Hartford Correctional Center is moot. *See Wright v. New York State Dep't of Corr. & Cmty. Supervision*, 568 F. App'x 53, 55 (2d Cir. 2014).

## CONCLUSION

Plaintiff's ADA claims are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915A(b)(1), and his motion for a temporary restraining order (Doc. #8) is DENIED as moot. The case will proceed on plaintiff's claims for money damages arising from alleged deliberate indifference to serious medical needs by all defendants as well as Nurse Joe's confinement of plaintiff to an overnight stay without clothing in the medical unit.

The Court enters the following orders:

(1) **The Clerk shall** verify the current work address for each defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the Court on the status of those waiver requests on the thirty-fifth day after mailing. If

8

any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3) **The Clerk shall** send plaintiff a copy of this Order.

(4) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the Court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

It is so ordered.

Dated at New Haven this 2d day of January 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge