# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SHAWN MILNER,
  *Plaintiff*,

v.                                        No. 3:18-cv-00903 (JAM)

SHARRON LAPLANTE,
  *Defendant*.

## ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Shawn Milner is a prisoner in the custody of the Connecticut Department of Correction (DOC). He has filed this *pro se* and *in forma pauperis* action principally alleging that prison officials were deliberately indifferent to his safety and serious medical needs. The sole remaining defendant, Dr. Sharron Laplante, has filed a supplemental motion for summary judgment asserting a defense of qualified immunity as to Milner's claim that she was deliberately indifferent with respect to the treatment of his seizure condition. Dr. Laplante's motion does not address Milner's claims that she was deliberately indifferent with respect to her treatment of Milner's pain and anxiety conditions. Milner in turn has cross-moved for summary judgment, contending that Dr. Laplante was deliberately indifferent to both his seizure and pain conditions.

For the reasons set forth below, I will grant Dr. Laplante's motion for summary judgment. I conclude that as to Dr. Laplante's treatment of Milner's seizure condition there are no genuine issues of fact to defeat the defense of qualified immunity. I will otherwise deny Milner's cross-motion for summary judgment for failure to show that no genuine fact issues remain. As a result of my rulings on the cross-motions for summary judgment, this case shall proceed to trial as to Milner's claim against Dr. Laplante for deliberate indifference with respect to the treatment of his pain and anxiety conditions.

1

## BACKGROUND

Milner originally filed this action against seven defendants, including Dr. Sharron Laplante. Milner alleged that these defendants violated his rights while he was a pretrial detainee at the Hartford Correctional Center (HCC) in the spring of 2018.

I issued an initial review order that dismissed some of Milner's claims and allowed others to proceed. *See Milner v. Laplante*, 2019 WL 79428 (D. Conn. 2019). In my initial review order, I described how Milner's deliberate indifference claim was premised in part not only on his allegation that Dr. Laplante failed to properly treat his seizure condition but also his allegation that Dr. Laplante failed to prescribe pain and anxiety medication. *See id.* at *1 (noting Milner's allegations that he "was not receiving the proper dose of anti-seizure medication and was not receiving his pain and anxiety medication" and that "Milner wrote to Dr. Laplante several times informing her of the medication issues and complaining of severe head and back pain," but that "Dr. Laplante did not respond").

The remaining defendants moved for summary judgment.[1] I granted summary judgment as to all of the defendants except for Dr. Laplante. *See Milner v. Laplante*, 2021 WL 735909 (D. Conn. 2021). I concluded that there was a genuine issue of fact whether Milner had properly exhausted his claim against Dr. Laplante and whether Dr. Laplante was deliberately indifferent as to his seizure condition. *Id.* at *7–9. I added that "[t]o the extent that Milner has separately complained that Dr. Laplante did not prescribe him pain medication, I need not separately address that issue at this time in view of my conclusion that there is sufficient evidence for Milner to proceed to trial on his major claim with respect to anti-seizure medication and in view

---

[1] Docs. #44, #80.

of the high likelihood that the trial evidence will embrace the full range of Dr. Laplante's prescriptions and relationship with Milner while he was at HCC." *Id.* at *9.

I later entered a trial scheduling order.[2] But then Dr. Laplante moved for leave to file a supplemental motion for summary judgment on the ground of qualified immunity—a defense that Dr. Laplante had asserted in her answer but not asserted in her initial motion for summary judgment.[3] I entered an order for Milner to file any objection to this motion, but he did not do so, and I granted the motion.[4]

Dr. Laplante then filed a supplemental motion for summary judgment on grounds of qualified immunity.[5] But because the motion and supporting papers address only the issue of Dr. Laplante's treatment of Milner's seizure condition and not her treatment of his pain and anxiety conditions, it is in essence a motion only for partial summary judgment.

Milner has filed an objection to the supplemental motion for summary judgment and a cross-motion for summary judgment in his favor.[6] His motion for summary judgment seeks judgment in his favor with respect to Dr. Laplante's treatment of his seizure condition and his pain condition. Dr. Laplante has not filed any reply or any objection or other response to Milner's motion for summary judgment.

## DISCUSSION

The principles governing my review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[2] Doc. #139.
[3] Docs. #30 at 2 (answer); Doc. #155 (motion). The motion stated that she had not asserted qualified immunity in her initial summary judgment motion because her counsel believed that she would prevail on the merits. Doc. #155 at 1 n.1.
[4] Docs. #156, #162.
[5] Doc. #170.
[6] Doc. #175.

law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who

opposes the motion for summary judgment and then decide if those facts would be enough—if

eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing

party. My role at summary judgment is not to judge the credibility of witnesses or to resolve

close and contested issues but solely to decide if there are enough facts that remain in dispute to

warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*);

*Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019).[7]

Because Milner is a *pro se* party, his pleadings and submissions on summary judgment

must be given a liberal construction. *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156

(2d Cir. 2017) (*per curiam*). The Court's local rules ensure that a *pro se* party is thoroughly

advised of the procedural requirements for opposing a summary judgment motion, *see* D. Conn.

L. Civ. R. 56(b), and Dr. Laplante has complied with the rule's requirement to serve on Milner a

notice detailing the rules that govern a motion for summary judgment.[8] A party's *pro se* status

does not relieve the party of the obligation to respond to a motion for summary judgment and to

support the party's claims with evidence as the rules require. *See Nguedi v. Fed. Rsrv. Bank of

N.Y*, 813 F. App'x 616, 618 (2d Cir. 2020).

Milner has filed a cross-motion for summary judgment, and Dr. Laplante has chosen not

to file any objection or response. Therefore, I will review Milner's unopposed motion in light of

the evidence of record and in light of the rule that even an unopposed motion for summary

judgment should not be granted in the absence of well-supported evidence to sustain the claim

for summary judgment. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 194–95 (2d Cir. 2014); D. Conn.

---

[7] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[8] Doc. #170-5.

L. Civ. R. 56(a)(3) (stating that if the opponent "fails to comply" with rules for an opposition to summary judgment, then the court may respond by "entering an order granting the motion *if the motion and supporting materials show that the movant is entitled to judgment as a matter of law*" (emphasis added)).

The Fourteenth Amendment due process clause protects the rights of pretrial detainees against intentional or deliberate indifference to their serious medical needs or unsafe conditions of confinement. To establish such a claim, a plaintiff must show that: (1) his conditions of confinement *objectively* "pose an unreasonable risk of serious damage to his health," and (2) the official *subjectively* "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 30, 35 (2d Cir. 2017); *see also Charles v. Orange Cnty.*, 925 F.3d 73, 86–87 (2d Cir. 2019) (applying same two-part objective/subjective standard to a detainee's claim for deliberate indifference to serious medical needs under the Fourteenth Amendment).

### *Dr. Laplante's motion for partial summary judgment re seizure medication*

As noted above, Dr. Laplante has moved for partial summary judgment on grounds of qualified immunity with respect to her treatment of Milner's seizure condition. The doctrine of qualified immunity protects a government official from liability if "(1) his conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Simpson v. City of New York*, 793 F.3d 259, 268 (2d Cir. 2015).

For purposes of Dr. Laplante's motion, I refer both to the documents filed in connection with the initial motion for summary judgment as well as the supplemental motion for summary judgment. The record shows that Milner was initially admitted to Bristol Hospital in April 2018 after he showed seizure-like symptoms following his arrest by the police.[9] One of the hospital's specialist neurologists—Dr. Cara Pittari—wrote that "I cannot be sure that all of his seizure episodes are epileptic seizures and cannot rule out that some may be nonepileptic spells."[10] Milner reported that he had stopped taking all his seizure medications about five days before because of depression about his epilepsy.[11]

Milner told Dr. Pittari that he had previously taken twice-daily doses of 125 milligrams of Dilantin and 1500 milligrams of Keppra.[12] Dr. Pittari wrote that Milner "should be on 1500 mg twice a day" of Keppra and that he should "continue on the 125 mg twice a day" of Dilantin.[13] And Dr. Pittari also noted that "I will give him an extra Dilantin 500 mg load as he stopped this medication for 5 days."[14]

Milner's hospital records reflect that he was also seen by Dr. Esam Alhariri, whose discharge instructions recommended that Milner "continue … Keppra" at 750 milligrams twice a day and Dilantin at 125 milligrams twice a day.[15]

Upon Milner's transfer from the hospital to prison, Dr. Laplante reviewed Milner's hospital records and issued a prescription for Milner to take 750 milligrams of Keppra twice a day.[16] This dosage prescribed by Dr. Laplante matches the amount in Dr. Alhariri's discharge

---

[9] Doc. #45 at 15, 18.
[10] *Id.* at 18.
[11] *Id.* at 15.
[12] *Ibid.*
[13] *Id.* at 18.
[14] *Ibid.*
[15] *Id.* at 11.
[16] *Id.* at 2; Doc. #170-3 at 2 (¶ 8); Doc. #175 at 7–8 (¶¶ 6, 10). In my prior summary judgment ruling, I noted the lack of evidence that Dr. Laplante had reviewed the hospital records. *See Milner*, 2021 WL 735909, at *9. But the

instructions, although it is half of what Dr. Pittari recommended. Dr. Laplante also prescribed Milner 300 milligrams of Dilantin once a day.[17]

According to Milner, Dr. Laplante was deliberately indifferent to his serious medical needs by cutting his Keppra dose from 3000 milligrams a day to 1500 milligrams a day and by raising his Dilantin dose from 250 milligrams a day to 300 milligrams a day.[18] He also attests that he was never seen by Dr. Laplante or any other doctor while at HCC, though he was seen by a registered nurse.[19] Milner asserts that because of the lack of proper seizure medication, he suffered several seizures while in detention.[20]

According to Milner, Dr. Laplante should have known the proper amount to prescribe not only on the basis of the Bristol Hospital records but also on the basis of DOC records reflecting nearly the same amounts of anti-seizure medications prescribed to Milner in 2016 when he was previously in DOC custody.[21] Milner has also submitted a DOC document from April 2016 including a DOC staff statement that Milner has a "known hx of seizures and medication" and that he was "observed having a seizure (convulsions) by custody, and medical staff," necessitating that he be "transported to the medical dept via stretcher."[22]

As to the objective prong of Milner's deliberate indifference claim, there is at least a genuine fact issue that Milner's seizure disorder was sufficiently serious to meet the objective prong for a deliberate indifference claim. *See, e.g.*, *Harrington v. Vadlamudi*, 2016 WL 4570441, at *7 (N.D.N.Y. 2016) (citing seizure disorder cases). This leaves for consideration whether there

---

supplemental summary judgment record includes Dr. Laplante's affidavit stating that she did so, which Milner does not dispute. *See* Doc. #170-3 at 2 (¶ 8); Doc. #175 at 7 (¶ 6), 9 (¶ 5).

[17] Doc. #45 at 2.

[18] Doc. #175 at 7–8 (¶¶ 7–11).

[19] Doc. #1-1 at 7 (¶ 17); Doc. #175 at 9 (¶ 3), 41 (¶ 5).

[20] Doc. #175 at 9 (¶ 6).

[21] *Id*. at 7 (¶ 6); *see also* Doc. #54 at 22, 34.

[22] Doc. #51 at 65 (capitalization altered).

is a genuine fact issue as to the subjective prong: to show that Dr. Laplante acted recklessly toward Milner with respect to her prescription of anti-seizure medication and—for purposes of her qualified immunity defense—whether an objectively reasonable doctor would have known that she was violating Milner's constitutional rights.

"It is well-established that mere disagreement over the proper treatment does not create a constitutional claim," and that "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). "Thus, mere medical malpractice is not tantamount to deliberate indifference, but it may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or a failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Charles*, 925 F.3d at 87.

Even viewing the facts in the light most favorable to Milner, I conclude that the evidence is not enough to show that an objectively reasonable doctor would have known that Dr. Laplante was violating Milner's rights with respect to the prescription of anti-seizure medication. The hospital records reflected that one hospital doctor (Dr. Pittari) believed that Milner should receive Keppra in the amount of 1500 milligrams twice per day, while another hospital doctor (Dr. Alhariri) issued discharge instructions for Milner to receive Keppra in the amount of 750 milligrams twice per day. After reviewing the hospital records, Dr. Laplante issued a prescription of Keppra consistent with the discharge instructions of the second doctor. At most, Milner has shown grounds for a good faith difference of opinion among medical professionals about the correct dosage of Keppra, and this is neither sufficient to establish a claim for deliberate medical indifference nor to overcome the defense of qualified immunity.

The record does not show as to Dr. Laplante's prescription of Keppra that she acted in a manner "that evinces a conscious disregard of a substantial risk of serious harm." *Charles*, 925 F.3d at 87. To be sure, in *Johnson v. Wright*, 412 F.3d 398 (2d Cir. 2005), the Second Circuit determined that there was a genuine issue of fact with respect to a prisoner's claim that prison officials should not have denied a prisoner a particular prescription "in the face of the unanimous, express, and repeated—but contrary—recommendations of plaintiff's treating physicians, including prison physicians." *Id.* at 400.

But here the prior treating physicians had divergent views of how much Keppra to prescribe for Milner. And if there is room for reasonable disagreement among medical professionals, there is no violation of a prisoner's constitutional rights. *See Darby v. Greenman*, 14 F.4th 124, 125 (2d Cir. 2021) (if the prisoner plaintiff "does not claim that [the defendant] denied him treatment but instead disagrees with [the defendant's] assessment of the severity of his condition and recommendation for treatment," then "[t]his constitutes, at most, a difference of opinion about the proper course of treatment" and "does not demonstrate deliberate indifference to a substantial risk of harm to [the plaintiff's] health").

Nor is there a genuine issue of fact to overcome Dr. Laplante's qualified immunity defense with respect to the dosage of Dilantin. It is true that Dr. Laplante prescribed a slightly higher dosage of 300 milligrams per day than the 250 milligrams per day that had been prescribed at Bristol Hospital. Yet even Dr. Pittari at one time recommended a dosage of 500 milligrams in light of Milner's failure to take Dilantin over the past five days. Milner has not adduced any evidence to dispute Dr. Laplante's opinion that 300 milligrams per day of Dilantin was within the range of medical reasonableness, much less evidence that any objectively

reasonable doctor would have known that it would violate Milner's constitutional rights if he was prescribed 300 milligrams per day of Dilantin rather than 250 milligrams per day.

In short, there is no genuine issue of fact to overcome Dr. Laplante's defense of qualified immunity with respect to Milner's claim that she was deliberately indifferent to his seizure condition. Therefore, I will grant Dr. Laplante's motion for partial summary judgment with respect to her treatment of Milner's seizure condition.

### *Milner's cross-motion for summary judgment as to seizure and pain treatment*

Milner has cross-moved for summary judgment as to his deliberate indifference claim with respect to his seizure medication and pain medication. Dr. Laplante has not filed any objection or response.

As to Dr. Laplante's treatment of Milner's seizure condition, I have already concluded that Dr. Laplante is entitled to qualified immunity with respect to this aspect of Milner's claim. Therefore, I will deny Milner's cross-motion for summary judgment with respect to Dr. Laplante's treatment of his seizure condition.

As to Dr. Laplante's treatment of Milner's pain condition, the summary judgment record shows that when Milner was at Bristol Hospital, Dr. Alhariri prescribed Milner 375 milligrams of Naproxen, a painkiller, in addition to the anti-seizure medications.[23] The record does not reflect that Dr. Pittari prescribed any painkillers or anxiety medications.[24]

When Milner got to HCC, Dr. Laplante reviewed Milner's hospital records and on April 13, 2018, prescribed him anti-seizure medications (as discussed above) but did not prescribe him Naproxen or any other pain or anxiety medication.[25] On an Inmate Administrative Remedy form

---

[23] Doc. #45 at 7, 11.
[24] *See id.* at 15–18.
[25] Doc. #45 at 2.

dated April 19, 2018, Milner complained that he was not being provided with the proper dosages of his pain and anxiety medications.[26] He stated that he had

> [an] an[x]iety disorder as well as chronic head and back pains that he was prescribed medication to treat. … This writer is not being provided his pain or anxiety medications even though they were prescribed for his treatment. Although this writer diligently continues to notify medical staff that he is being denied his medications unreasonably, no action has been taken to remedy the above depicted unconstitutional conduct. In resolution this writer would simply like to be provided all of his medications to prevent future injuries and to ensure that adequate medical care is provided. Thank you.[27]

Two days later, a nurse responded, instructing him to "attempt an informal resolution prior to filing a grievance."[28] Milner's sworn complaint claims that he "continued to notify every nurse that came to administer his medications" that he was not receiving his pain and anxiety medications, but "all nurses stated that they could not help the Plaintiff."[29] Milner then wrote to Dr. Laplante several times about not receiving medication and suffering severe head and back pain as a result, but Dr. Laplante did not respond.[30]

Milner's motion for summary judgment contends that Dr. Laplante unconstitutionally denied him his pain medications.[31] As to the objective prong, there is at least a genuine fact issue that Milner's chronic pain was sufficiently serious. "We will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such pain." *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003). "The denial of pain medication may rise to the level of sufficient seriousness to satisfy the

---

[26] Doc. #44-3 at 7.
[27] *Ibid.* (capitalization altered).
[28] *Ibid.*
[29] Doc. #1-1 at 6 (¶ 16); *see also* Doc. #1 at 7 (sworn signature); *D'Andrea v. Nielsen*, 765 F. App'x 602, 603 n.1 (2d Cir. 2019) (verified complaint is competent summary judgment evidence).
[30] Doc. #1-1 at 7 (¶ 17); Doc. #175 at 41 (¶ 6) (Milner's summary judgment declaration).
[31] Doc. #175 at 11–12, 40–41 (¶ 4).

objective prong of the deliberate indifference standard in some circumstances." *Carilli v. Semple*, 2021 WL 2515799, at *22 (D. Conn. 2021).

This leaves for consideration whether there is a genuine fact dispute that Dr. Laplante acted recklessly toward Milner in failing to prescribe pain medication for Milner. According to Milner's summary judgment declaration, Dr. Laplante simply refused to prescribe pain medication despite Dr. Laplante's knowledge that it had been prescribed by Bristol Hospital and despite his complaints to her.[32]

Because Dr. Laplante has failed to respond to Milner's summary judgment motion, I will generally assume Milner's allegations to be true.[33] But even so, Milner does not adduce evidence to conclusively show that Dr. Laplante's failure to prescribe pain medications was because of her intentional or deliberate indifference rather than mere inattention or negligence. For purposes of Milner's cross-motion for summary judgment, I must view the facts in the light most favorable to Dr. Laplante. It is a quintessential jury issue whether Dr. Laplante's failure to prescribe any pain medications despite Milner's repeated complaints amounted to deliberate indifference to Milner's serious medical needs. Therefore, because genuine fact issues remain, I will deny Milner's cross-motion for summary judgment with respect to Dr. Laplante's failure to prescribe pain medication.

Milner's complaint further alleges that Dr. Laplante was deliberately indifferent in failing to prescribe him anxiety medication.[34] Because neither party addresses this aspect of Milner's

---

[32] *Id.* at 41–42 (¶¶ 6–10).

[33] I do not assume to be true Milner's allegation that Dr. Laplante's adverse treatment of him was because of her dislike for Milner's aunt who used to work as a DOC nurse. Doc. #175 at 10 (¶ 10). This claim is conclusory, and Milner offers no non-hearsay basis to accept it as true. *See Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) ("[C]onclusory statements or mere allegations are not sufficient to defeat a summary judgment motion."); *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (hearsay statements are not admissible evidence for summary judgment).

[34] Doc. #1-1 at 6–7 (¶¶ 16–17).

deliberate indifference claim in their cross-motions for summary judgment, it shall proceed to trial along with Milner's pain-medication claim. *See, e.g.*, *NovaFund Advisors, LLC v. Capitala Grp., LLC*, 2022 WL 624524, at *18 n.12 (D. Conn. 2022); *In re Scotts EZ Seed Litig.*, 2017 WL 3396433, at *5 (S.D.N.Y. 2017).

Of course, qualified immunity is a defense that must be affirmatively asserted, and it can be waived either by failure to raise it in a timely fashion or to raise it with sufficient particularity. *See Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016); *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997). Because Dr. Laplante's supplemental motion for summary judgment address only Milner's seizure-related claim and not his claims concerning treatment for pain and anxiety and because Dr. Laplante has not filed any objection or response to Milner's cross-motion for summary judgment, I cannot consider at this juncture whether Dr. Laplante is entitled to qualified immunity with respect to Milner's claims concerning his treatment for pain and anxiety. At the trial of this action, however, Dr. Laplante may renew her defense that Milner did not exhaust his administrative remedies and her defense of qualified immunity if appropriate.

## CONCLUSION

For the reasons set forth above, the Court GRANTS defendant Dr. Laplante's motion for partial summary judgment (Doc. #170) with respect to Milner's claim of deliberate indifference as to the treatment of his seizure condition. The Court DENIES plaintiff Milner's cross-motion for summary judgment (Doc #175) with respect to Dr. Laplante's treatment of both his seizure and pain conditions. Accordingly, this case shall proceed to trial solely with respect to Milner's claim that Dr. Laplante was deliberately indifferent with respect to treatment of his conditions of pain and anxiety. The Court will separately enter a trial scheduling order.

It is so ordered.

Dated at New Haven this 30th day of September 2022.

/s/ ***Jeffrey Alker Meyer***
Jeffrey Alker Meyer
United States District Judge